UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCORRO JACOBO AGUILAR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.: 1:19-cv-0193 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF SOCORRO JACOBO AGUILAR, AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Socorro Jacobo Aguilar asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record, including opinions of a licensed nurse and non-examining physicians. For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

In July 2015, Plaintiff filed her application for benefits, alleging disability beginning April 4, 2014, due to breast cancer, uterus cancer, depression, and arthritis in her knees. (Doc. 9-6 at 6; Doc. 9-7 at 12) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 9-4) Plaintiff requested an administrative hearing on the application and testified before an ALJ on October 4, 2017. (*See* Doc. 9-3 at 22, 40) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on February 7, 2018. (*Id.* at

22-33) Plaintiff requested review of the decision with the Appeals Council, which denied the request on December 10, 2018. (*Id.* at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 4, 2014. (Doc. 9-3 at 24) Second, the ALJ found Plaintiff's severe impairments included: "history of breast cancer, stage II[;] history of uterus cancer stage I; major depressive disorder, recurrent; migraine headaches; seizure disorder; arthritis bilateral knees; [and] arthritis bilateral hands." (*Id.*) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 9-3 at 24-27) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can lift 50 pounds occasionally, 25 pound[s] frequently. The claimant can sit, stand, or walk six hours in an eight-hour day. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant can frequently climb ramps, stairs, crouch, crawl, kneel, and stoop. The claimant should avoid concentrated exposure to temperature extremes and hazards. The claimant should never drive a vehicle for work. The claimant cannot remember and carry out detailed jobs. The claimant cannot maintain attention concentration persistence and pace for detailed tasks.

(*Id.* at 27) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "capable of performing past relevant work as a packager machine operator and farm worker fruit II." (*Id.* at 32)   Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from April 4, 2014, through the date of the decision. (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ failed "to analyze the opinion evidence in accordance with the regulations, Agency policy, and Ninth Circuit precedent." (Doc. 12 at 13, emphasis omitted)  The

3

Commissioner argues that "[s]ubstantial evidence supports the ALJ's decision and the Court should affirm." (*See* Doc. 15 at 7)

## A.     Evaluation of the Medical Evidence

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Finally, an ALJ must consider opinions of other medical professionals—such as nurse practitioners—who may offer "judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1); *see also Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (describing circumstances when opinions from "other sources" may be considered acceptable medical opinions).[1]

An opinion is not binding upon the ALJ, and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support

---

[1] The Social Security Administration adopted new rules applicable to claims filed after March 27, 2017, which expanded the category of acceptable medical providers to include, among others, nurse practitioners. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). These revisions do not apply to Plaintiff's claim, which was filed in 2015.

either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting the limitations identified by Debra Martin, FNP-C; Dr. Octrant; and Dr. Kiger.[2] (Doc. 12 at 13-20)  Because the medical opinions were not contradicted by the opinions of other physicians, the ALJ was required to identify clear and convincing reasons for rejecting the physician's opinions.  *See Lester*, 81 F.3d at 831.

### 1. Opinion of Debra Martin, FNP-C

Ms. Martin, a certified family nurse practitioner who treated Plaintiff on a monthly basis, completed a "Physical Medical Source Statement" on March 8, 2016. (Doc. 9-15 at 32-35)  She indicated Plaintiff had a history of malignant carcinoma of the left breast.  (*Id.* at 32)  Ms. Martin noted Plaintiff was diagnosed with a partial tear of the left MCL, depression, insomnia, osteoarthrosis, and chronic fatigue. (*Id.*)

Ms. Martin reported Plaintiff underwent an MRI on her left knee that showed the partial tear in February 2016 and a knee x-ray showed osteoarthrosis in 2015.  (Doc. 9-15)  According to Ms. Martin, Plaintiff could walk one block without severe pain; sit for more than two hours at a time and at least six hours in an eight-hour day, and stand for thirty minutes at one time and about four hours total in an eight-hour day.  (*Id.* at 33)  She opined Plaintiff needed to be able to shift positions at will from sitting, standing, or walking; and to be able to walk around every 90 minutes.  (*Id.*)  Ms. Martin noted Plaintiff also required unscheduled breaks due to muscle weakness, chronic fatigue, pain/paresthesias, and adverse effects of her medication.  (*Id.*)  Ms. Martin believed Plaintiff could lift and carry less than 10 pounds frequently and 20 pounds occasionally.  (*Id.* at 34)  She opined Plaintiff could occasionally twist, stoop, crouch, and crawl.  (*Id.*)  She indicated Plaintiff had limits with reaching, handling, and fingering; and could use her hands for twisting, fine manipulation, and reaching for 30 percent of each

---

[2] In the opening brief, Plaintiff asserts that "the opinion[s] of Ms. Martin, Dr. Angert and the State Agency medical consultants… establish greater, and more detailed limitations than are accounted for in the ALJ's [residual functional capacity] finding." (Doc. 12 at 14)  However, Plaintiff fails to address the ALJ's analysis of Dr. Angert's opinion. (*Id.* at 14-20)  Instead, Plaintiff focuses only upon the ALJ's analysis of the opinions from Ms. Martin and the state agency physicians.  (*Id.*)

Notably, the Ninth Circuit "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant.'" *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  Rather, the Court will "review only issues with are argued specifically and distinctly." *Id.*  Therefore, when a claim of error is not argued and explained, the argument is waived. *See id.* at 929-30 (holding an argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding the assertion of error was "too undeveloped to be capable of assessment"). Because Plaintiff has not identified a specific error by the ALJ related to Dr. Angert's opinion— and offered no analysis to assist the Court in her opening brief—any challenge related to the opinion of Dr. Angert was waived. *See Hibbs*, 273 F.3d at 873 n.34.

day. (*Id.*) Further, she believed Plaintiff would be off task 25 percent or more each day and was incapable of even low stress work due to pain, depression, and chronic fatigue. (*Id.* at 35) Ms. Martin also opined Plaintiff "need[ed] to avoid fumes [and] gases," and should avoid temperature extremes because heat caused dizziness and cold caused joint pain. (*Id.*)

After summarizing limitations identified by Ms. Martin, the ALJ stated: "The undersigned gives this opinion little weight as it is not consistent with the claimant's history of largely normal physical examinations including a normal gait station and neurological findings (Exhibit 5F) (Exhibit 11F). Further Ms. Martin is not an acceptable medical source." (Doc. 9-3 at 21) Plaintiff argues the reasons identified by the ALJ to reject the limitations identified by Ms. Martin are not "clear and convincing," and the ALJ failed to properly evaluate the opinion using factors identified by the Regulations. (Doc. 12 at 15-17)

         a.    *Status as an "other source"*

As noted above, an ALJ must consider the opinions of nurse practitioners when reviewing the medical record. 20 C.F.R. § 404.1527(f)(1); *Revels*, 874 F.3d at 655. However, nurse practitioners are not considered acceptable medical sources, but rather "other sources." *Bifarella v. Colvin,* 51 F.Supp. 3d 926, 931 (E.D. Cal. 2014) ("a nurse, although a treating medical source, is viewed as an 'other source' and not as an 'acceptable medical source'") (citing SSR 06-3p, 2006 SSR LEXIS 5; 20 C.F.R. §§ 404.1513(d)).

Opinions from "other sources," such as nurse practitioners, "are not entitled to the same deference" as those of a physician. *Revels*, 874 F.3d at 655. Opinions of "other sources" "may be discounted [if] the ALJ provides reasons germane to each source." *Fields v. Comm'r of Soc. Sec.*, 2019 WL 3003992 at *3 (E.D. Cal. July 10, 2019) (citing *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017)); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (opinions from other sources may be rejected with germane reasons). Because Ms. Martin was a certified nurse practitioner, the ALJ could reject the limitations identified by Ms. Martin by providing germane reasons.

         b.    *Inconsistency with the record*

The Ninth Circuit determined that "inconsistency with other medial records is a germane reason to reject the opinion of a non-acceptable medical source." *Green v. Berryhill*, 731 Fed. Appx. 596, 599

(9th Cir. 2018), citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). To reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

The ALJ found the limitations identified by Ms. Martin were "not consistent with the claimant's history of largely normal physical examinations including a normal gait, station, and neurological findings." (Doc. 9-3 at 31, citing Exh. 5F [Doc. 9-14 at 2-60; Doc. 9-15 at 2-70] and Exh. 11F [Doc. 9-17 at 9-45]) However, the ALJ failed to explain how Plaintiff's gait and neurological findings are inconsistent with the limitations identified by Ms. Martin with reaching, handling, fingering, and fine manipulation. In addition, the ALJ failed to identify any evidence that conflicted Ms. Martin's conclusion that Plaintiff "need[ed] to avoid fumes [and] gases" as well as temperature extremes.[3] (*See* Doc. 9-3 at 31)

Moreover, the ALJ failed to identify any specific clinical findings in the treatment record, and instead cites broadly to more than 100 pages of medical records. This failure to identify specific evidence among the exhibits is an error, as the Ninth Circuit indicated courts will not "comb the administrative record to find specific conflicts." *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see also Verduzco v. Colvin*, 2019 WL 384960 at *6 (N.D. Cal. Aug. 14, 2015) (explaining the court "cannot meaningfully review the ALJ's determination" where the ALJ cited generally to several exhibits, "which comprise[d] more than 120 pages of medical records"); *Wilson v. Berryhill*, 2019 WL 384960 at *7 n. 11 (S.D. Al. Jan. 30, 2019) (finding a "summary citation to two exhibits, collectively consisting of over seventy pages of medical records, is insufficient, as the Court is unable to determine what inconsistencies the ALJ relied on").

The ALJ's analysis of the opinion of Ms. Martin fails to "achieve the level of specificity" that the Ninth Circuit requires. *Embrey,* 849 F.2d at 421-22. As such, the purported inconsistency with the record is not a germane reason for giving less weight to the limitations identified by Ms. Martin.

---

[3] In the residual functional capacity, the ALJ indicated Plaintiff "should avoid concentrated exposure to temperature extremes and hazards." (Doc. 9-3 at 27) However, it is unclear why the ALJ believed Plaintiff needed to only avoid concentrated exposure rather than *any* exposure to temperature extremes, fumes, and gases.

      *c.*  *Factors under Social Security Ruling 06-03p*

Plaintiff contends the ALJ also erred by failing to consider the factors identified in Social Security Ruling 06-03p and the Regulations to evaluate the opinion of other medical sources. (Doc. 12 at 18-19) In Social Security Ruling[4] 06-03p, the Commissioner acknowledged that "medical sources who are not acceptable medical sources, such as nurse practitioners, … have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians." *Id.*, SSR LEXIS 5 at *8. As such, the Commissioner identified several factors the ALJ should consider when determining the weight to give opinions "other sources," including: the length of time the source has known the claimant, how frequently the source saw the claimant, the consistency of the opinion with other evidence in the record, the relevance of the opinion; and the source's training and expertise. *Id.*, 2006 SSR LEXIS 5 at *11, *15.

The ALJ acknowledged that Ms. Martin was "the claimant's provider." (Doc. 9-3 at 31) However, the ALJ did not address the length of the treatment relationship between Ms. Martin and Plaintiff, or the fact that Ms. Martin treated Plaintiff on a monthly basis. (*See id.*) Further, as discussed above, the ALJ erred in evaluating the consistency of the opinion with other evidence in the record. Thus, the ALJ failed to properly evaluate the opinion of Ms. Martin using factors identified by the Regulations and SSR 06-03p.

    2.  <u>Opinions of Drs. Ocrant and Kiger.</u>

On September 29, 2015, Dr. Ocrant reviewed available records related to Plaintiff's application for benefits at the initial level. (Doc. 9-4 at 6, 8-9) Dr. Ocrant noted an x-ray of Plaintiff's right knee showed narrowing of the medial joint space and osteophytic spurring, and Plaintiff reported knee pain with movement and palpation. (*Id.*) Further, Dr. Ocrant observed that Plaintiff received injections in both knees. (*Id.*)

Dr. Ocrant opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit about six hours in an eight-hour day, and stand/walk about six hours in an eight-hour day. (Doc. 9-4 at 8) According to Dr. Ocrant, Plaintiff had postural limitations due to her bilateral

---

[4] Social Security Rulings are issued by the Commissioner to clarify regulations and policies. *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989). Although the Rulings do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Id.*

knee pain, and she was limited to occasionally crouching; crawling; kneeling; and climbing ramps, stairs, ladders, ropes, and scaffolds. (*Id.* at 8-9) Dr. Ocrant found no manipulative or environmental limitations. (*Id.*) Dr. Kiger identified the same physical limitations and affirmed Dr. Ocrant's opinion on January 15, 2016. (*Id.* at 19-20)

The ALJ gave the opinions of Drs. Ocrant and Kiger "little weight, as the medical record does not support the[] limitations." (Doc. 9-3 at 30) The ALJ indicated opinions were inconsistent with the record because it "shows that the claimant has had largely normal physical examinations including a normal gait and station as well as only mild tenderness of the joints." (*Id.*, citing Exh. 5F [Doc. 9-14 at 2-60, Doc. 9-15 at 2-70]; Exh. 9F [Doc. 9-16]; and Exh. 11F [Doc. 9-17 at 9-45]) Thus, the ALJ again cited to nearly 200 pages of medical records in Exhibits 5F, 9F, and 11F. (*See id.*) However, the ALJ did not explain how the limitations identified by Drs. Ocrant and Kiger were inconsistent with these records, and offered only his conclusion. For example, the ALJ failed to explain how the limitation to light work was inconsistent with Plaintiff's examinations, or why he believed Plaintiff could perform postural activities on a frequent basis, rather than occasionally as the physicians opined after reviewing the record and imaging of Plaintiff's knees.

The limited analysis by the ALJ is insufficient, as the Ninth Circuit determined "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Consequently, the ALJ erred in evaluating the opinions of Drs. Ocrant and Kiger.

**B.    The Residual Functional Capacity Determination**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments"—whether severe or not—when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

Importantly when, as here, "an ALJ rejects all medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence is less likely." *See Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb. 1, 2011). For example, this Court determined an ALJ erred where all medical opinions were rejected before the ALJ formulated the RFC. *See Perez v. Comm'r of Soc. Sec.*, 2018 WL 721399 (E.D. Cal. Feb. 6, 2018).

In *Perez*, two non-examining physicians opined the claimant "had no severe physical impairments. *Id.*, 2018 WL 721399 at *6. The ALJ "gave no weight" to these opinions, finding the record indicated the claimant had some limitations. *Id.* "After rejecting all the doctor's opinions, the ALJ concluded that Plaintiff would be capable of a reduced range of light work with postural manipulative and environmental restrictions." *Id.* The Court found the ALJ erred, explaining:

> A claimant's residual functional capacity is not a medical opinion, but is an issue to be decided by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.920(d)(2). However, the finding must be supported by substantial evidence in the record and the ALJ must explain his reasoning behind the RFC. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.1520c, 416.920c.
>
> Here, the ALJ stated that the RFC was supported by the weight of the objective evidence and Plaintiff's less than credible testimony. But the Court is unable to determine how the ALJ arrived at the conclusion that Plaintiff was capable of light work. Absent adequate explanation of the record, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined his own limitations for Plaintiff. The Court finds that this was error. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person,... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

*Id.*, 2018 WL 721399 at *7-8. Without the support of a physician's opinion, the Court concluded the RFC lacked the support of substantial evidence. *Id.* at *8.

Likewise, the Court is unable to determine upon what evidence the ALJ relied to determine Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, and perform postural activities—including crouching, kneeling, and stooping—on a frequent basis. Each of the opinions in the record identified greater limitations. For example, Drs. Ocrant and Kiger determined Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally. (Doc. 9-4 at 8, 19-20) In addition, the physicians believed Plaintiff could only occasionally crouch, crawl, knee,

and climb due to bilateral knee pain, which was treated with injections. (*Id.* at 8-9, 19-20)  Without medical opinions to support the ALJ's conclusions, the RFC lacks the support of substantial evidence. *See Perez,* 2018 WL 721399 at *7-8; *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) (holding "the ALJ's conclusions are not supported by substantial evidence" if an RFC is formulated without the findings of a physician).  Accordingly, the ALJ erred in evaluating the medical record and assessing Plaintiff's physical RFC.

**C.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred in evaluating the opinions of Plaintiff's treating nurse practitioner and the physicians who reviewed the record.  In addition, the residual functional capacity articulated by the ALJ lacks the support of substantial evidence in the record and the matter should be remanded for further consideration.  *See Tackett*, 180 F.3d at 1102-03 (remanding the matter to the Social Security Administration for reconsideration after finding the ALJ erred by offering his own medical conclusion, which was not supported by any medical evidence); *Perez*, 958 F.2d at 446 (finding that where the ALJ offered any opinion "without any assessment of residual functional capacity by a physician, …it is necessary to remand for the taking of further functional evidence").

///

**CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ failed to apply the proper legal standards in evaluating the limitations identified by Ms. Martin, Dr. Ocrant, and Dr. Kiger.  Due to these errors, the residual functional capacity lacks the support of substantial evidence, and the ALJ's decision cannot be upheld by the Court.  *See Sanchez*, 812 F.2d at 510; *Perez*, 958 F.2d at 446. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Socorro Jacobo Aguilar, and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **April 27, 2020**                          /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE